Paul B. Gaffney (PG 7800)
Christopher N. Manning (CM 4231)
Judith G. Becker (JB 2672)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

WARNER BROS. ENTERTAINMENT INC. and
TWENTIETH CENTURY FOX FILM CORPORATION,

                  Plaintiffs,

        - against -

IDEAL WORLD DIRECT, PETER ARMSTRONG,
JONATHAN DAVIES, CHRIS COPE, C&C
NETWORKS, INC., MATTHEW ASHWORTH,
ROBERT RAWSON, MULTIMEDIA REACTOR, LLC,
OLEG KOLOSOV, GENERAL MEDIA, LLC, SAUL
PULER, MARC MOLINARO, ADAM BARGER,
ISHMAEL LOPEZ, MATTHEW DICKINSON, and
CASHIER MYRICKS a/k/a SURGIO CRUZE a/k/a
SERGIO CRUZE a/k/a SERGIO JOBS a/k/a STEVE
SCOTT a/k/a JOE LANDER,

                  Defendants.

-------------------------------------------------------------------X

No. 06 Civ. 4174 (WHP)

**SECOND
AMENDED COMPLAINT**

**ECF CASE**

       In support of their claims for injunctive relief and damages, Plaintiffs Twentieth

Century Fox Film Corporation ("Fox") and Warner Bros. Entertainment Inc. ("Warner Bros.")

aver and allege as follows:

## INTRODUCTION

1.      Defendants operate or have operated Internet website businesses purposefully designed to profit from the ongoing epidemic of digital piracy of copyrighted motion pictures and television programs.  These businesses, which help consumers find and download films and television programs without permission from the copyright owners, promote copyright infringement among unsophisticated consumers as well as sophisticated Internet thieves.

2.      Through the design of and statements made on their websites, Defendants give Internet users the false impression that the services offered by their websites and the downloading activities they facilitate are legal.  Some of the Defendants have gone so far as to declare explicitly that the services they offer are "100% legal."  In fact, this statement is 100% false.  Making copies of films and television programs off the Internet without the permission of the copyright owner is patently illegal, and distributing a product or service with the objective of promoting its use to infringe copyright also violates the law.

3.      Defendants' own actions and statements make clear that inducing and fostering Internet copyright infringement of popular motion pictures and television programs is the purpose of their businesses.  By way of example, when it was operational, <IShareIt.com>, the website operated by Defendants Ideal World Direct and Peter Armstrong, featured a list of the "Latest Downloadable Movies" that were available through the website, including many of Plaintiffs' recently released copyrighted films, accompanied by promotional images for twelve recently released copyrighted films:



4. This action is brought by two of the principal victims of Defendants' illegal conduct. Plaintiffs Fox and Warner Bros. are motion picture studios responsible for creating and/or distributing a significant amount of the world's filmed entertainment. Not only do Defendants induce and foster infringement, but Defendants' websites are designed to capitalize on unsophisticated consumers who are likely to believe, incorrectly, that Defendants' film and television distribution services are authorized by motion picture studios, including Plaintiffs. As detailed below, this conduct violates both the Copyright Act and the Lanham Act.

## THE PARTIES

5.      Plaintiff Fox is a Delaware corporation, with its principal place of business in California.

6.      Plaintiff Warner Bros. is a Delaware corporation, with its principal place of business in California.

7.      Each of these Plaintiffs owns the copyright and/or exclusive reproduction and distribution rights to many popular films and television programs, including those listed on Exhibit 1. Each of the films and television programs listed on Exhibit 1 is or was made available for download through Defendants' websites and has been downloaded through Defendants' websites as indicated on that exhibit. Each work listed on Exhibit 1 is the subject of a valid and enforceable Certificate of Copyright Registration from the Register of Copyrights.

8.      Together, Defendants Ideal World Direct and Peter Armstrong direct and control, and at all relevant times have directed and controlled, the activities of <IShareIt.com> and <Flixs.net>, including the wrongdoing alleged herein. The websites are registered to Defendants at an address in Delaware. However, Defendant Armstrong is a resident of, and Defendant Ideal World Direct has its principal place of business in, Great Britain. Although the home page of <IShareIt.com> is no longer operational, pages from the website as it previously appeared are attached hereto as Exhibit 2. <Flixs.net> is substantially similar to the prior version of <IShareIt.com>.

9.      Defendant C&C Networks, Inc. has its principal place of business in Alabama. Defendant Chris Cope is a resident of Alabama. Together, these two defendants direct and control, and at all relevant times have directed and controlled, the activities of <MovieAdvanced.com>, including the wrongdoing alleged herein. Pages from

<MovieAdvanced.com> as it previously appeared are attached as Exhibit 3 hereto and pages from <MovieAdvanced.com> as it currently appears are attached as Exhibit 4 hereto.

10. Defendant Matthew Ashworth is a resident of Utah who directs and controls, and at all relevant times has directed and controlled, the activities of <MovieAdvanced.org>, including the wrongdoing alleged herein. At all relevant times, <MovieAdvanced.org> has appeared virtually identical to <MovieAdvanced.com>, pages of which are attached as Exhibits 3 and 4 hereto.

11. Defendant Robert Rawson is a resident of Australia who directs and controls, and at all relevant times has directed and controlled, the activities of <MovieAdvanced.net>, including the wrongdoing alleged herein. At all relevant times, <MovieAdvanced.net> has appeared virtually identical to <MovieAdvanced.com>, pages from which are attached as Exhibits 3 and 4 hereto.

12. Defendant Adam Barger is a resident of Florida who directs and controls, and at all relevant times has directed and controlled, the activities of <FreeDVDDirect.com> and <MyKazaaGold.com/Movies>, including the wrongdoing alleged herein. Although the home page of <FreeDVDDirect.com> has been shut down since Plaintiffs filed their original Complaint, pages from that website as it previously appeared are attached as Exhibit 5 hereto. Pages from <MyKazaaGold.com/Movies> are attached as Exhibit 6 hereto.

13. Defendant Jonathan Davies is a resident of Great Britain who directs and controls, and at all relevant times has directed and controlled, the activities of <Download-Secrets.com>, including the wrongdoing alleged herein. Pages from <Download-Secrets.com>, including pages available at http://www.learn.download-secrets.com, are attached as Exhibit 7 hereto.

5

14.     Defendant Ishmael Lopez is a resident of Illinois who directs and controls, and at all relevant times has directed and controlled, the activities of <MovieBeyond.com> and <MovieSonar.com>, including the wrongdoing alleged herein.  Pages from <MovieBeyond.com> as it previously appeared are attached as Exhibit 8 hereto.  Pages from <MovieBeyond.com> as it currently appears are attached as Exhibit 9 hereto. <MovieBeyond.com> currently is virtually identical in appearance to <MovieSonar.com>.

15.     Defendant Matthew Dickinson is a resident of Australia who directs and controls, and at all relevant times has directed and controlled, the activities of <MoviesDirectPro.com>, including the wrongdoing alleged herein.  Pages from <MoviesDirectPro.com> are attached as Exhibit 10 hereto.

16.     Defendant MultiMedia Reactor LLC, a company that has its principal place of business in Florida, directs and controls, and at all relevant times has directed and controlled, the activities of <MultiMediaReactor.net>, <MultiMediaReactor.com>, and <AllMovieDownloads.com>, including the wrongdoing alleged herein.  Each of these three websites has been shut down since Plaintiffs filed their original Complaint in this matter.  Pages from <MultiMediaReactor.net>, as it appeared at the time that it was still up and running, are attached hereto as Exhibit 11.  <MultiMediaReactor.com> was virtually identical to <MultiMediaReactor.net>.  Pages from <AllMovieDownloads.com>, as it appeared at the time that it was still up and running, are attached as Exhibit 12 hereto.

17.     Defendant General Media, LLC has its principal place of business in Florida.  Defendant Oleg Kolosov is a resident of Florida.  Together, these two defendants direct and control, and at all relevant times have directed and controlled, the activities of <Flix-Online.com>, including the wrongdoing alleged herein.  Although <Flix-Online.com> has been

shut down since Plaintiffs filed their original Complaint, pages from that website as it previously appeared are attached as Exhibit 13 hereto.

18. Defendant Cashier Myricks, also known as "Surgio Cruze," "Sergio Cruze," "Sergio Jobs," "Steve Scott," and "Joe Lander," is a resident of California who directs and controls, and at all relevant times has directed and controlled, the activities of <Unlimitedownloads.com>, including the wrongdoing alleged herein. Pages from <Unlimitedownloads.com> are attached as Exhibit 14 hereto.

19. Defendant Marc Molinaro is a resident of California who directs and controls, and at all relevant times has directed and controlled, the activities of <TVShows.org> and <TVNow.org>, including the wrongdoing alleged herein. Pages from <TVShows.org> as it previously appeared are attached hereto as Exhibit 15 and pages from <TVShows.org> as it currently appears are attached hereto as Exhibit 16. When it was operational, <TVNow.org> appeared to be virtually identical to <TVShows.org>.

20. Defendant Saul Puler is a resident of New York who directs and controls, and at all relevant times has directed and controlled, the activities of <MyKazaa.com>, including the wrongdoing alleged herein. Although <MyKazaa.com> has been shut down, pages from that website as it appeared at the time that it was fully operational are attached as Exhibit 17 hereto.

## JURISDICTION AND VENUE

21. As this case arises under the Copyright Act, 17 U.S.C. § 101, *et seq.* and the Lanham Act, 15 U.S.C. § 1125, jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), (b).

22. This Court has personal jurisdiction over the Defendants in that each of them has had continuous and ongoing business contacts with residents of the state of New York

7

through, among other things, the ownership or control of one or more interactive websites aimed at residents of New York and this District, through which subscription agreements are entered into with residents of New York and this District; by intentionally engaging in acts that have caused harm to Plaintiffs in New York and in this District; and by engaging in the wrongful acts alleged herein in New York and in this District. For the same reasons, venue lies in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

### DEFENDANTS' WRONGFUL CONDUCT

23.    Motion picture studios distribute their copyrighted works through a variety of channels, including theatrical release, pay-per-view, on DVDs and videocassettes made available to the public for rent or sale, through authorized Internet distribution services such as Movielink, and through over-the-air broadcasts, among others. Piracy of filmed entertainment has long been a problem for the motion picture industry, but at no time has the threat been more urgent than now, in the Internet age, when unauthorized digital copies of motion pictures are being distributed worldwide over the Internet. This infringement has been repeatedly and accurately described in the courts and elsewhere as "massive" and "epidemic," and the injury it is inflicting on one of the nation's most vibrant industries is enormous.

24.    Defendants' objective is to capitalize on this wave of unlawful activity. Through the websites named herein, Defendants charge or charged their customers "membership" fees in exchange for substantial assistance in locating and downloading infringing copies of copyrighted motion pictures and television shows, including those owned by Plaintiffs. Defendants' own statements, as well as their business models, reveal that they intend that consumers use their websites for infringing purposes. Copies of pages from Defendants' websites are attached hereto as Exhibits 2 through 17.

25.     Others who have engaged in the same wrongdoing have been permanently enjoined by this Court.  *See Columbia Pictures Industries, Inc., et al. v. Brandon Drury d/b/a EasyDownloadCenter.com and TheDownloadPlace.com, et al.*, 05 Civ. 8698 (RCC); *Disney Enterprises, Inc., et al. v. Mark Musselman d/b/a BrandNewMovies.com and MoviePros.net, et al.*, 05 Civ. 1986 (JSR); *Disney Enterprises, Inc., et al. v. Click Enterprises Inc. and Philip G. Evans*, 04 Civ. 7508 (BSJ).

## IShareIt.com and Flixs.net

26.     Defendants Ideal World Direct and Peter Armstrong operate <Flixs.net>, which is substantially similar to the previously operated website, <IShareIt.com>.  Although the home page of <IShareIt.com> has been shut down, the "members" section of <Flixs.net> is currently hosted on pages from the <IShareIt.com> website, available at http://www.ishareit.com/members/index.php.  Both websites are referred to collectively herein as "<IShareIt.com>" and all allegations herein apply equally to both websites.

27.     Through <IShareIt.com>, Defendants Ideal World Direct and Peter Armstrong offer the "IShareIt" software, which provides access to download "1 BILLION MUSIC [sic], MOVIES, and VIDEOS," including "Full MOVIES and video clips."  *See* Exhibit 2.  Through the website, Ideal World Direct and Armstrong thoroughly instruct customers on how to install the IShareIt software and use it to "Download, Burn, [and] Play Unlimited . . . Movies."  *See id.*  In the "Members Section" of <IShareIt.com>, Defendants describe the "IShareIt" software as a program that "can download single files from multiple users to ensure . . . the most efficient use of . . . bandwidth," and "resumes broken downloads or downloads that were in progress" when a computer was last shut down, making it a "very good, very powerful P2P system."  *See id.*

28.     In addition to providing the IShareIt software, Defendants Ideal World Direct and Armstrong provide assistance with downloading copyrighted works by posting in the "Members Section" of their site a "User Guide" and an extensive "FAQ's" page with answers to numerous questions users may have regarding downloading and viewing films. *See id.* More personalized support for "Download problems" is offered via e-mail. *See id.* On the website's "Tools" pages, Defendants also offer links to third-party websites and programs that enable users to play the films they have downloaded. *See id.* In addition, in the "Members Section," Defendants offer links and instructions for installing LimeWire, a third-party peer-to-peer file-copying program. *See id.*

29.     The "membership" fees charged by Ideal World Direct and Armstrong reflect the substantial assistance they provide to their customers through their websites. Internet users can choose a one-year membership for $23.95, a two-year membership for $35.95, or a lifetime membership for $49.95. It is only by paying the "membership" fees that Internet users are able to access the valuable assistance provided by the site.

30.     Ideal World Direct and Armstrong's objective is to have consumers use their website to download, without authorization, copies of copyrighted films. Indeed, when it was operational, the home page of <IShareIt.com> declared: "Napster Lives On!!!" *See* Exhibit 2. This statement is a clear reference to the "old" Napster service, which facilitated theft of copyrighted files from the Internet, and makes clear that Ideal World Direct and Armstrong aim to satisfy a known demand for copyright infringement—the market comprising former Napster users. As Napster is now a legitimate pay-to-download service, users of the "old" Napster must look elsewhere to find illegitimate copies of copyrighted works, and Ideal World Direct and Armstrong aim to provide websites to which these consumers can turn.

31.     Defendants Ideal World Direct and Armstrong, who target unsophisticated consumers through their websites, give the false impression that the sites and the downloading activities they foster are legitimate and legal.  The Defendants create this false impression by displaying the titles and promotional images of Plaintiffs' films on the websites, thereby falsely suggesting that the sites are authorized by Plaintiffs.  On pages of the sites that are accessible to Internet users who have not paid the "membership" fees, Defendants post a drop-down list of "Movies Now Downloadable." *See id.*  This list is made up almost exclusively of titles of copyrighted films, including Warner Bros.' "Batman Begins" and Fox's "Mr. and Mrs. Smith." *See id.*  Defendants also post promotional images associated with eleven copyrighted films under the heading, "Latest Downloadable Movies!!!" *See id.*  Among the promotional images posted are those for Warner Bros.' "The Corpse Bride" and Fox's "Transporter 2."  Defendants' display of Plaintiffs' promotional materials and film titles on <IShareIt.com> creates the false impression that Defendants Ideal World Direct and Armstrong are authorized to facilitate the distribution of Plaintiffs' films on the Internet.

### MovieAdvanced.com, MovieAdvanced.net, and MovieAdvanced.org

32.     Defendants Chris Cope and C&C Networks direct and control the activities of <MovieAdvanced.com>.  Defendant Matthew Ashworth directed and controlled the activities of <MovieAdvanced.org>.  Defendant Robert Rawson directs and controls the activities of <MovieAdvanced.net>.  These Defendants (collectively, the "operators of <MovieAdvanced.com>") have worked in conjunction with one another to operate and support <MovieAdvanced.com>.  <MovieAdvanced.com>, <MovieAdvanced.net>, and, when it was

operational, <MovieAdvanced.org>[1] were all identical in appearance to one another. Indeed,

text on all three sites indicated that they were all actually "MovieAdvanced.com." For example,

an Internet user visiting the illegal downloading website at http://www.movieadvanced.net sees a

webpage stating "Welcome to www.MovieAdvanced.com":



Moreover, <MovieAdvanced.net> and, when it was operational, <MovieAdvanced.org>, shared

a "members" section with <MovieAdvanced.com>—"members" could use the same username

and password to log in to any one of the three sites, and doing so would direct them from any of

the home pages to various pages hosted at http://movieadvanced.com/members.

      33.    The operators of <MovieAdvanced.com> encourage and assist Internet

users to engage in copyright infringement of motion pictures. Through the website, they

---

[1] <MovieAdvanced.org> was shut down some time after Plaintiffs filed the Complaint in this matter.

encourage customers to download "Full-length DVD Quality Movies, TV-Shows, . . . and much more" with "no content limits." *See* Exhibit 3. At one point, they explained the benefits potential customers receive for joining as "all the tools you need to download and burn video files including open source as well as proprietary file-sharing software. Plus, . . . unlimited access to tools for burning unlimited CD's, making your own copies, finding files and getting the most out of your movie download experience." *See id.* Since the filing of this lawsuit, the operators of <MovieAdvanced.com> have effectively acknowledged the impropriety of this statement by removing it from the website. *See* Exhibit 4.

34. For some period of time, the operators of <MovieAdvanced.com> provided their customers with links and step-by-step instructions for using a number of third-party file-copying programs—including LimeWire, the website's "Featured Download"—for downloading films and television shows. *See* Exhibit 3. At some point, the operators of <MovieAdvanced.com> modified the site. Although the site continues to provide a link to LimeWire, which continues to be the site's "Featured Download," as well as links to Torrent sites, it now also provides links to <CinemaNow.com>, <MovieLink.com>, <Vongo.com>, and <iFilm.com>, all of which are designated as "authorized" sources of film downloads—a tacit admission that the other sources of film downloads available on the site are unauthorized sources of the works. *See* Exhibit 4.

35. The operators of <MovieAdvanced.com> also provide customers with the software and instructions they need to view the films and television programs they download and burn them to CDs. In the "members area," they post an extensive "Frequently Asked Questions" page to provide customers with additional "Online Help" for downloading problems. *See*

Exhibits 3, 4. They also provide additional, personalized assistance with illegal downloading via e-mail. *See* Exhibit 4.

36.     The value of the downloading assistance services provided through <MovieAdvanced.com> is evidenced by the "membership fees" charged for full access to the site. Specifically, customers of <MovieAdvanced.com> must pay $39.95 for an "Unlimited Access Membership," $24.95 for a "2 Year Access Membership," or $19.95 for a "1 Year Access Membership." *See* Exhibit 3.

37.     The operators of <MovieAdvanced.com> are fully aware of the illegal nature of the services offered by their website and the infringing conduct they facilitate. On <MovieAdvanced.com>, they acknowledge that "Using file-sharing (P2P) software for the uploading or downloading of copyrighted works without the permission or authorization of the copyright holders may be illegal." *See* Exhibit 3. In addition, under the guise of providing information "on how to minimize copyright infringement using p2p applications," the website links to a page on the Electronic Frontier Foundation's website entitled "How Not To Get Sued For File-Sharing," which offers Internet users advice on how to infringe copyrights but avoid copyright infringement lawsuits. *See* Exhibit 4. These acknowledgements of illegality demonstrate that the operators of <MovieAdvanced.com> assist and promote copyright infringement by third parties through their websites despite full knowledge that such conduct is illegal.

38.     Despite their knowledge of the illegal nature of <MovieAdvanced.com>, the operators of the website further encourage unsophisticated Internet users to download copyrighted works by giving them the false impression that the services provided by <MovieAdvanced.com> and the downloading activities it facilitates are legitimate and legal.

14

The operators of <MovieAdvanced.com> create this false impression and promote infringing conduct in part by arranging to have <MovieAdvanced.com> appear as a "sponsored link" on search engines such as Google in response to queries for certain copyrighted films, including films recently released in theaters or on DVD.  For example, a Google search for "download King Kong" conducted at or around the time that the copyrighted motion picture was released in theaters produced <MovieAdvanced.com> as a sponsored link accompanied by the phrase, "100% Legal Movie Download Site.  Download New King Kong Now!"  Such advertisements mislead consumers about the legality of <MovieAdvanced.com>.  The advertisements for <MovieAdvanced.com> seen by Google users who searched for "download King Kong" improperly assured them that using the service to download that and other copyrighted films was "100% Legal."  This false representation was plainly intended to dupe a subset of prospective customers, who were looking for a way to legally obtain films off of the Internet, into thinking that <MovieAdvanced.com> was a lawful source for downloads of copyrighted films.  Moreover, such advertisements further evidence that facilitating copyright infringement was the purpose and design of the website, and that the operators of <MovieAdvanced.com> intentionally induced such infringement.

### FreeDVDDirect.com and MyKazaaGold.com

39.     Defendant Adam Barger operates <MyKazaaGold.com/movies> and he previously operated <FreeDVDDirect.com>.  Although <FreeDVDDirect.com> has been shut down, when it was operational, it was substantially similar to <MyKazaaGold.com/movies>.  Both of Barger's websites are referred to collectively herein as "<FreeDVDDirect.com>" and all allegations herein regarding <FreeDVDDirect.com> apply equally to Barger's operation of <MyKazaaGold.com/movies>.

15

40.     Barger offered users of <FreeDVDDirect.com> the "Free DVD Direct Software," which provided Internet users access to "unlimited free downloads of all [their] favorite movies" and television programs, including "Blockbuster Hits" and "Even New Releases." *See* Exhibit 5.  On <MyKazaaGold.com>, this software is offered under a different name—the "My Kazaa Gold Software." *See* Exhibit 6.  Through <FreeDVDDirect.com>, Barger provided video tutorials and detailed instructions for downloading and installing the software, and then using the software to search for and download "millions of . . . movies within our network." *See* Exhibit 5.  Barger also offered his customers additional support in the form of frequently asked questions and "Troubleshooting" tips, and promised "clear[,] concise" technical support via e-mail. *See id.*  Additionally, Barger offered links and instructions for downloading various third-party file-copying programs, such as LimeWire and iSwipe. *See id.*

41.     Barger assisted his customers in viewing the films and television programs they downloaded by offering "bonus" software, including "codecs," a media player, a CD burner, and a DVD ripper—an illegal product whose purpose is to strip the digital rights management protection from DVDs containing copyright films and television programs. *See* Exhibit 5.  These tools were intended to make the experience of viewing an illegally downloaded version of a film as close as possible to the experience of watching authentic copies of films obtained through legitimate channels.

42.     The value of the services that Barger provided through <FreeDVDDirect.com> was evidenced by the "membership" fees he charged Internet users for access to the "unlimited" downloads that were available through the website.  Customers of <FreeDVDDirect.com> were required to pay either $23.76 for a two-year membership or $29.99 for a "lifetime membership."  As Barger explained on one of the pages of

<FreeDVDDirect.com> that was accessible to all Internet users, "The software is free. You are paying for the online help and support and the online tutorials for the lifetime of the membership." *See* Exhibit 5.

43.     Barger attracted customers to his website not only by promising that customers would be able to download "all [their] favorite movies," but also by falsely representing that the website and the downloading conduct it assisted were legal. On the "Legal" page of the website, Barger posted the following misleading statement:

> Free DVD Direct is a movie download service. It is NOT file sharing. . . .
>
> Online . . . networks referred by Free DVD Direct are subject to a statutory license for non-interactive webcasting of digital audio and take care of royalty payments due to various organizations in accordance with the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 114.

*See* Exhibit 5. This statement gave users the false impression that the site operated legally, paying for all necessary licenses. The home page of <FreeDVDDirect.com> also linked to a chart comparing the website's features to those of iTunes, Napster, and other legitimate download sites, thereby falsely implying that it, too, was a legitimate downloading service.

44.     Barger further created the false impression that his website and the downloading activities it facilitated were legal by featuring Plaintiffs' film and television program titles and promotional images on the website. Users of <FreeDVDDirect.com> were able to search for any film or television program in <FreeDVDDirect.com>'s "network," including Plaintiffs' films and television programs. In response to the requested search, the title and promotional image of the film or program appeared next to a "Download Now" icon. *See* Exhibit 5. For example, a search for the Fox film "In Her Shoes" conducted just prior to the

Plaintiffs' filing of their original Complaint led to a page posting the cover art for the film and

what appeared to be a link to download the film:



*See* Exhibit 5. Another search for the copyrighted television program "The West Wing,"

conducted around the same time, produced a similar result. *See id.*

        45.      Barger promoted and invited the downloading of Plaintiffs' copyrighted

works while creating the false impression that such conduct was legal by arranging to have

<FreeDVDDirect.com> appear as a "sponsored link" on search engines such as Google

(www.google.com) and Yahoo (www.yahoo.com) in response to queries for films.  For example,

a Google search for "download movies legally" yielded <FreeDVDDirect.com> as a sponsored search result, as did a Yahoo search for "download recent movies."

46. The display of Plaintiffs' promotional materials and film titles on <FreeDVDDirect.com> and the placement of <FreeDVDDirect.com> as a "sponsored link" in response to searches for films created the false impression that Barger was authorized to facilitate the distribution of Plaintiffs' films on the Internet through <FreeDVDDirect.com>. This same conduct also establishes Barger's intent to induce copyright infringement.

### Download-Secrets.com

47. Defendant Jonathan Davies operates <Download-Secrets.com>, which includes web pages available on the Internet at http://www.learn.download-secrets.com ("<Learn.Download-Secrets.com>"). Through <Download-Secrets.com>, Defendant Davies invites prospective customers to "download full length movies of every type, old and new," including "movies that have only just premiered and occasionally . . . even . . . movies before they premiere!" *See* Exhibit 7. No aspect of Internet piracy is more threatening to the motion picture industry than the one promised here—that a studio's film will be stolen and uploaded to the Internet before a single ticket to it is sold. Davies also urges Internet users to "download complete series of TV shows like Buffy, Sopranos, Seinfeld or Lost. You can download TV shows from around the world just hours after first broadcast or DVD release." *See id.*

48. Davies assists customers of <Download-Secrets.com> looking to engage in the infringing conduct the website encourages by thoroughly instructing his customers on how to download motion pictures and television programs from news groups on the Internet with the "Agent" newsreader, a method that Davies describes as "very reliable," one that "cannot be shut down by the courts and . . . [is] a constant source of every type of file." *See id.* Davies also lists

19

on his site numerous "Newsgroups" where infringing copies of Plaintiffs' copyrighted films and television programs can be found and downloaded.

49.    Internet users who wish to receive the substantial assistance in acquiring "free downloads for life" offered by Defendant Davies through <Download-Secrets.com> must pay $3.75 for a seven-day "trial" membership, $18.98 for a one-year membership, or $29.95 for a one-year membership processed via telephone billing. *See id.*

50.    Defendant Davies is fully aware of the illegal nature of the services offered by <Download-Secrets.com> and the infringing conduct it facilitates, as evidenced by the fact that Davies assures potential customers that they will not be caught and penalized for the infringing conduct in which they engage through the website: "You can download anonymously and securely. You don't even have to share any files, you'll be free to download any movies you want (leech) without restrictions or limits." *See id.*

51.    Davies' objective is to promote use of his website by third parties to download, without authorization, copies of copyrighted films and television programs, and he makes liberal use of the titles of Plaintiffs' copyrighted works to promote this infringement. On pages available on <Learn.Download-Secrets.com>, Davies posts extensive lists of downloadable films and television shows, including a number of Plaintiffs' copyrighted works that are available for download through the site, such as Warner Bros.' "Batman Begins" and Fox's "Dodgeball: A True Underdog Story," among other Fox and Warner Bros. films. *See id.* These lists of works that "members have downloaded recently" are offered to potential customers as "examples" of the films and television programs "you will be downloading as soon as you sign up." *See id.*

52.     Defendant Davies' use of the titles of Plaintiffs' copyrighted works on his website is designed to mislead consumers into believing that Plaintiffs have authorized Davies to distribute their works via the Internet when, in fact, they have not.

### MovieBeyond.com and MovieSonar.com

53.     Defendant Ishmael Lopez operates the websites <MovieBeyond.com> and <MovieSonar.com>.  At all relevant times, these websites appeared to be substantially similar to one another.  Both websites are referred to collectively herein as "<MovieBeyond.com>."

54.     Through <MovieBeyond.com>, Lopez offers Internet users "all the software [they] need" to "[s]earch thousands upon thousands of . . . Full-length DVD Quality Movies, and download any of "Over 80 Million Movies and TV-Shows."  *See* Exhibit 9.

55.     Lopez assists his <MovieBeyond.com> customers with downloading copyrighted files from the Internet by providing access to and "instructions on how to download, install and configure beyond g07 . . . [,] [t]he latest generation P2P application that accesses the Gnutella Network . . . ."  *See* Exhibit 9.  In the "Private Members Download Area" of the website, Lopez thoroughly and graphically instructs users on how to download files using this software, and provides several "media players" that allow users to "correctly display the video files [they] download."  *See id.*  Lopez also offers users of <MovieBeyond.com> a "DVD Ripper," as well as links to and instructions for downloading several other third-party file-copying applications such as LimeWire, iSwipe, and BitTorrent client and torrent search software.  Through the website's "FAQs & Tutorials" page, Lopez provides additional support for customers using the website to download and play files.  *See id.*

56.     Lopez encourages Internet users to "[d]ownload anything [they] want, any time [they] want," including "any Movie."  *See* Exhibit 8.  Moreover, he creates the false

impression that doing so is legal. Lopez creates this false impression in part by displaying the titles and promotional images associated with popular copyrighted films and television programs on his websites, thereby giving consumers the false impression that he has been authorized to facilitate the distribution of copyrighted works through <MovieBeyond.com>. For example, on the home page of <MovieBeyond.com>, Lopez displays a "Search" field with the title of one of Plaintiffs' copyrighted films, Warner Bros.' "Harry Potter and the Goblet of Fire," already filled in, indicating that it is available for download through the website. *See* Exhibit 9. For some time, Lopez also prominently featured on the home page of his website titles and cover art for six other motion pictures and television shows, including Fox's "The Family Guy." *See* Exhibit 8. Lopez adds to the false impression that his website and the services offered thereon are authorized and legal by posting statements advising Internet users to "shop and compare" <MovieBeyond.com> to legitimate media downloading services such as iTunes, MSN Music, and Real Rhapsody, thereby falsely implying that it, too, offers legal downloading services. *See* Exhibits 8, 9.

57.     Internet users who wish to receive the substantial downloading assistance offered by Lopez through <MovieBeyond.com> must pay $39.95 for an "Unlimited Access Membership," $24.95 for a two-year membership, or $19.95 for a one-year membership.

58.     Lopez promotes the use of <MovieBeyond.com> by third parties to download unauthorized copies of Plaintiffs' copyrighted works and creates the false impression that the website's services and the downloading it assists are legitimate despite full knowledge of the illegal nature of the services offered by the website and the infringing conduct it facilitates. Lopez acknowledges on <MovieBeyond.com> that "Most commercially released popular songs, films, and software is [sic] NOT authorized for free redistribution but requires [sic] separate

purchase." *See* Exhibit 9. On a page entitled "P2P Software Risks," Lopez also includes a link to the Electronic Frontier Foundation's "How Not To Get Sued By The RIAA For File-Sharing" webpage, which offers Internet users advice on how to download infringing files while avoiding copyright infringement lawsuits. *See id.* Lopez fully expects members of <MovieBeyond.com> to use his website for downloading copyrighted material, despite his knowledge that such conduct is illegal.

## MoviesDirectPro.com

59.     Through <MoviesDirectPro.com>, Defendant Matthew Dickinson offers Internet users the ability to download an "unlimited" number of "Full Length DVD Quality Movies" and "Whole Season's [sic] of TV shows." *See* Exhibit 10. As Dickinson explains on the website's home page, he provides "the most cutting edge and simple to use technology on the planet, so you can download the largest selection of Movies, TV shows, Games & Software available anywhere in the quickest time possible direct to your PC." *See id.* In fact, Dickinson promises potential customers of <MoviesDirectPro.com> a "100% Money Back Guarantee" if they do not find the films they are looking for through the website. *See id.*

60.     In the "members" area of <MoviesDirectPro.com>, Dickinson provides links to download "Azureus," a BitTorrent file-copying program, as well as detailed instructions and guides detailing how to install the program and use it to download files from the Internet. *See* Exhibit 10. <MoviesDirectPro.com> also offers recommendations for and links to alternative third-party file-copying programs, including Shareaza and LimeWire. Dickinson also provides instructions and tools that allow users of his website to view and copy the films and television programs they have downloaded. *See id.* Dickinson further assists his customers'

infringing conduct by posting FAQ pages and offering additional, personalized assistance via e-mail. *See id.*

61.    In exchange for the assistance Dickinson provides to customers of <MoviesDirectPro.com> who seek to download "whatever movie [or] tv show . . . that [their] heart desires," he charges $27.80 for a "Fully Unlimited Access Membership" to the website, $0.99 per month for a two-year membership, or $1.49 per month for a one-year membership.

62.    Testimonials from "members" of <MoviesDirectPro.com> posted on the website make clear that its customers find the services it provides useful in building a collection of copyrighted works by stealing them off of the Internet. For example, according to one customer, "M. O'Brien":

> Every movie I've ever wanted to watch I can download and watch on my TV. I can download movies that the video store doesn't even have! Thanks..."

*See* Exhibit 10. Another customer, "B. Dawson" writes,

> You guys have the fastest download service I've ever used, I downloaded a TV show I missed in 17 minutes yesterday, keep up the great work!

*See id.* Such statements evidence the substantial nature of the assistance Dickinson provides his customers with their infringing conduct, and encourage other Internet users to engage in similar infringing conduct through <MoviesDirectPro.com>.

63.    Dickinson targets unsophisticated consumers by giving them the false impression that <MoviesDirectPro.com> and the downloading activities it fosters are legitimate and legal. Dickinson creates this false impression in part by arranging for his website to appear as a "sponsored link" on search engines such as Google and Yahoo in response to searches for popular copyrighted films. For example, a recent Yahoo search for "download borat movie"—a reference to Fox's popular film, "Borat: Cultural Learnings of America for Make Benefit

Glorious Nation of Kazakhstan," which is currently playing in theaters—yielded <MoviesDirectPro.com> as a sponsored search result, accompanied by the phrase, "Download unlimited movies, TV shows and music from only $17.88." Additionally, at one point in time, a Google user who searched the term "download Walk the Line"—referencing the award-winning Fox film—was provided with a link to <MoviesDirectPro.com>.

64. Dickinson further creates the false impression that his website is authorized and legal through statements made on the home page of <MoviesDirectPro.com>, including statements that the "award winning technology" provided to customers through the site has been featured by "Yahoo, CNBC, CBS, BBC, PC Magazine, MSN and in newspapers all around the world." *See* Exhibit 10. These statements falsely imply that <MoviesDirectPro.com> has been endorsed as a legitimate service by those entities. Dickinson's representations of legality and his use of Yahoo and Google advertising create the false impression that the website is authorized to facilitate the distribution of Plaintiffs' films on the Internet. In addition, this same conduct constitutes further evidence that facilitating copyright infringement is the purpose and design of <MoviesDirectPro.com>, and that Dickinson intentionally induces such infringement.

## MultiMediaReactor.com, MultiMediaReactor.net, and AllMovieDownloads.com

65. Defendant MultiMediaReactor LLC previously operated the websites <MultiMediaReactor.com>, <MultiMediaReactor.net>, and <AllMovieDownloads.com>. These three websites, which have been voluntarily shut down since Plaintiffs filed their original Complaint in this matter, are referred to collectively herein as <MultiMediaReactor.net>.

66. Through <MultiMediaReactor.net>, Defendant MultiMedia Reactor LLC encouraged Internet users to download Plaintiffs' copyrighted films, including "movies that are

currently playing in the theater to old movie classics. We'll show you how to quickly access all of them!" *See* Exhibit 11. Making clear their intent to induce customers to steal films instead of pay for them, MultiMedia Reactor LLC asked: "Why spend all your hard-earned money renting videos?" *See id.*

67.     Through <MultiMediaReactor.net>, Defendant MultiMedia Reactor LLC provided Internet users with the ability to download virtually any copyrighted film from the Internet. MultiMediaReactor LLC gave its customers access to "the most current popular versions [of third-party file-copying programs] as well as lesser known but equally powerful applications," including eMule and eDonkey. *See* Exhibit 11. In the website's "members area," Defendant MultiMediaReactor LLC thoroughly instructed customers on how to install these programs and use them illegally to download copies of Plaintiffs' copyrighted films. *See id.* In the "members area," customers were also provided with instructions on how to play downloaded motion picture files, as well as links to "recommended codecs" that would "ensure most movies will play successfully." *See id.* In addition, MultiMediaReactor LLC also offered more personalized support via an online web form to "personally help set you on your way to enjoying all the free music and movies you want." *See id.* Indeed, Defendant bragged that "No site offers more knowledgeable help." *See id.*

68.     The testimonials that Defendant MultiMedia Reactor LLC posted on <MultiMediaReactor.net> indicate that customers of the websites found the services and support that was offered to be of great assistance with their downloading activities. For example, one customer, "Jenna B.," stated, "My whole spring break I downloaded MP3s and movies and now I am taking them back to school. I have enough for the whole semester! Thanks for your site, it rocks!" *See* Exhibit 11. Another customer, "Jennifer E.," wrote, "I wanted to let you all know

how happy I am with your service. The movies and music selection has exceeded my expectations!" *See id.*

69.     The required fee of $23.40 for a year of access to the "Members Area" of <MultiMediaReactor.net> reflects the substantial assistance that Defendant MultiMedia Reactor LLC provided to its customers through its website.

70.     Defendant MultiMedia Reactor LLC encouraged Internet users to download "unlimited movies" through <MultiMediaReactor.net> despite full knowledge that such conduct is illegal. MultiMedia Reactor LLC clearly acknowledged on its website that "[i]ndividuals who reproduce, distribute copies, publicly perform or display works without the copyright owner's consent, may be in violation of the law." *See* Exhibit 11. In fact, <MultiMediaReactor.net> provided tips to customers on how to "protect" themselves from copyright infringement suits, such as changing the file names of infringing files or disabling the "uploading" capabilities of file-copying programs to avoid detection. *See id.* MultimediaReactor LLC also provided links to the Electronic Frontier Foundation's "How Not to Get Sued" page on its website to provide further information on how to download infringing copies of copyrighted works without being caught.

71.     Despite knowing of the illegal nature of the services offered by its website and the infringing conduct that it facilitated, Defendant MultiMedia Reactor LLC targeted unsophisticated Internet consumers, giving the false impression that <MultiMediaReactor.net> and the downloading activities it facilitated are legal. MultiMedia Reactor LLC created this false impression in part by arranging for <MultiMediaReactor.net> to appear as a "sponsored link" on search engines such as Yahoo. For example, a search for "download new movies" yielded <MultiMediaReactor.net> as a sponsored link on Yahoo, accompanied by the phrase,

"Download New Movies Online." MultiMediaReactor added to this false impression through statements on its own websites. For instance, a page accessible to non-members entitled "Is It Legal" misleadingly referred to an "April 2003 . . . landmark victory against 28 entertainment companies [in which] a federal court declared that [] software distributors are not liable for copyright infringement by software users when the software had significant legal uses." *See* Exhibit 11. This statement continued to appear on Defendant's website long after the district court case to which it referred had been reversed by a unanimous U. S. Supreme Court in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764 (2005). MultiMedia Reactor LLC's advertisements for its websites and statements posted on its website demonstrate that MultiMedia Reactor LLC intend to create, and in fact did create, the false impression that <MultiMediaReactor.net> and the downloading conduct it facilitated are legal. Additionally, such advertisements and statements further evidence that MultiMedia Reactor LLC intentionally induced copyright infringement.

### Flix-Online.com

72. Through their website <Flix-Online.com>, Defendants General Media, LLC and Oleg Kolosov provided Internet users with the tools they need to "download virtually every Movie published," as well as television programs and series. *See* Exhibit 13. Customers of <Flix-Online.com> received detailed, step-by-step instructions on how to install and use third-party file-copying tools, including eMule and eDonkey, to download copyrighted works. *See id.* Through the website, General Media, LLC and Kolosov also provided instructions for playing the films and television programs that users downloaded, and offered links to various "codecs"—programs that enable users to play downloaded video files. *See id.* General Media, LLC and

Kolosov also offered customers of <Flix-Online.com> online support "around the clock" to assist them in downloading files through the website. *See id.*

73.     The required "membership" fee of $23.40 that Internet users were required to pay to access the "membership" section of <Flix-Online.com> reflects the value of the downloading assistance that Defendants General Media, LLC and Kolosov provided to their customers.

74.     Through <Flix-Online.com>, General Media, LLC and Kolosov encouraged Internet users to download Plaintiffs' copyrighted works, "everything from classics to new releases" and "even entire television series," in part by misleading them and causing them to believe, wrongfully, that doing so was legal. *See* Exhibit 13. Indeed, one customer "review" of the site stated: "I am happy to keep my membership as you have guaranteed the fact that I am legally protected when I download movies and music from the sites that you led me to. Thank you, and your company for your help in this matter." *See id.*

75.     In addition, on the website's "Legal" page, General Media, LLC and Kolosov misleadingly referred to "fellow P2P software distributor" Grokster's "landmark victory against 28 entertainment companies," stating that a "federal court declared that the software distributors are not liable for copyright infringement by software users when the software had significant legal uses." *See id.* This statement was deceptive in that it continued to appear on the website long after the referenced "victory" had been overturned by a unanimous U.S. Supreme Court in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764 (2005).

76.     Defendants General Media, LLC and Kolosov further created the impression that their website and the downloading activities it facilitated were legal by arranging

for <Flix-Online.com> to appear as a sponsored search result on search engines such as Google in response to motion picture-related searches. For example, a Google search for "Download Movies Legally," conducted just prior to Plaintiffs' filing of their original Complaint, yielded <Flix-Online.com> as a sponsored search result. Such Google advertisements also provide further evidence that General Media, LLC and Kolosov induced infringing conduct and intended for Internet consumers to use their site to download illegal copies of motion pictures.

77. Despite creating the false impression that the website's services and the downloading activities it facilitated are legitimate, elsewhere on <Flix-Online.com>, General Media, LLC and Kolosov acknowledged that the conduct they assisted—the "unauthorized copying of copyrighted materials"—is illegal. Indeed, they offered users of their website advice on how to protect themselves from copyright infringement suits, specifically recommending that users disable the "uploading" capabilities on their file-copying applications to avoid detection. *See* Exhibit 13. <Flix-Online.com> also linked to a webpage hosted by the Electronic Frontier Foundation entitled "How Not To Get Sued By The RIAA For File-Sharing," which offers additional advice on avoiding copyright infringement lawsuits. *See id.*

**Unlimitedownloads.com**

78. Defendant Cashier Myricks, also known as "Surgio Cruze," "Sergio Cruze," "Sergio Jobs," "Steve Scott," and "Joe Lander," operates the website <Unlimitedownloads.com>, which he promotes as "The Best Place [sic] Download Movies, Music, & Games." *See* Exhibit 14. Myricks operates this website at numerous URLs, including http://www.unlimitedownloads.com, http://www.mp3musiq.com, http://www.freemusiq.com, http://www.musiqonline.com, http://www.myfreemusics.com, http://www.myfreemusiq.com,

and http://www.onlinemusiq.com. The websites operated at all of these URLs are referred to collectively herein as "<Unlimitedownloads.com>."

79.     Through <Unlimitedownloads.com>, Myricks gives Internet users "instant access" to the "largest . . . movie selection," and invites customers to "download and burn unlimited [sic] for free." *See* Exhibit 14. Myricks facilitates his customers' downloading of copyrighted films and television programs by providing links and instructions for installing various third-party file-copying programs, such as LimeWire, as well as instructions on using those programs to search for and download files. *See id.* Myricks has described the downloading assistance he provides through <Unlimitedownloads.com> as follows:

> [W]e do all the research to find you the best and latest mp3 software to keep you form [sic] doing hours of frustrating searching over the internet. We've already done the hard work now all you have to do is start using the tools we provided you.

In addition, in the website's "Members Area," Myricks offers "bonus software," including media players and DVD ripping and burning programs to allow users to view the films and television programs they have downloaded through the website. *See id.* For additional downloading questions not answered in the "members area," Myricks offers "Free 24 hour technical support" via e-mail. *See id.*

80.     The value of all of the "hard work" that Myricks does to assist his customers with downloading copyrighted works is evidenced by the membership fees he charges. In particular, customers of <Unlimitedownloads.com> must pay $34.95 for "Lifetime Access," $.99 per month for two years of access, or $1.49 per month for one year of access. Myricks previously charged higher rates for the one-year and two-year "memberships."

81.     Several testimonials posted on the home page of <Unlimitedownloads.com> indicate that Myricks' customers have found his assistance to be of

great value. For example, "Angelina R." writes that, through <Unlimitedownloads.com>, she "found all [her] favorite movies and even comedy shows," and "Maria G." states that the website's "fast and informative support staff . . . helped [her] through every step." *See* Exhibit 14. Such statements not only indicate that Myricks' customers find his services and support to be of great assistance with their downloading activities, but they also encourage other consumers to engage in similar activities.

82. Myricks promotes the unauthorized downloading of Plaintiffs' copyrighted works through his website in part by creating the false impression that <Unlimitedownloads.com> and the downloading activities it fosters are legitimate and legal. In particular, on <Unlimitedownloads.com>, Myricks posts statements indicating that it is the "#1 Movie Download Website As Seen On" CNN, NBC, CNET, AOL, and other news services. *See id.* These statements falsely imply that <Unlimitedownloads.com> has been endorsed as a legitimate service by those entities.

83. Myricks promotes the unauthorized downloading of Plaintiffs' copyrighted films and television programs through <Unlimitedownloads.com> and creates the false impression that the website and the downloading activities it facilitates are legal despite his knowledge of the illegal nature of the website and the infringing conduct it enables. On <Unlimitedownloads.com>, Myricks acknowledges that "Most commercially released popular songs, films, and software is NOT authorized for free redistribution but requires separate purchase or licensing," and directs users to the Electronic Frontier Foundation's "How Not To Get Sued By The RIAA For File-Sharing" webpage, which offers Internet users advice on infringing copyrights while avoiding copyright infringement lawsuits. *See* Exhibit 14. These acknowledgements of illegality demonstrate that Myricks assists and promotes copyright

infringement by third parties through his website despite his knowledge that such conduct is illegal.

## TVShows.org and TVNow.org

84. Defendant Marc Molinaro operates the websites <TVShows.org> and <TVNow.org>. Although <TVNow.org> was shut down some time after Plaintiffs filed their Amended Complaint in this matter, when it was operational, these websites appeared to be substantially similar to one another. In addition, the same user name and password could be used to log in to the "Member's Area" of both websites. Moreover, logging in to the "Member's Area" leads customers of both websites to the same pages on the Internet, located at http://www.members-area.org/members.php. Both websites are referred to collectively as "<TVShows.org>."

85. Through <TVShows.org>, Defendant Marc Molinaro promises Internet users "instant access" to "unlimited TV show downloads" as well as "your favorite movies (including new releases)." *See* Exhibit 16. On a prior version of <TVShows.org>, he encouraged potential customers to "[s]top paying for cable, DVD rentals and even going to the movies," claiming that they should join the "[o]ver 30,000,000 people using this service [to] download[] their favorite TV Shows [and] Movies." *See* Exhibit 15.

86. In the "Member's Area," Molinaro provides his customers "with all the tools [they] need to start watching as many shows online and DVD quality movies as [they] can handle." *See* Exhibit 15. In particular, through <TVShows.org>, Molinaro provides links for downloading BitTorrent and other third-party file-copying applications, along with instructions on how to install these programs and use them to download files. *See* Exhibit 16. He also provides access to a "Video Player" that customers can use to view the television programs and

films they download through the websites, along with a "CD Burning & Ripping" program, and "Pro-Pack Codecs" that make "Movies and Music look and sound better than ever." *See id.* For any downloading questions not answered by the online instructions Molinaro posts in the Member's Area, additional technical support is offered via a toll-free telephone number or live web "chat." *See id.*

87.     The value of the extensive downloading support provided by Defendants Molinaro through <TV.org> and <TVShows.org> is evidenced by the fees he charges his customers. Internet users must pay $27.80 for "Lifetime full & unlimited access" to the "Member's Area," $0.99 per month for two years of access, or $1.49 per month for one year of access. As is stated on a "FAQ" page, "[t]he software is free. You are paying for the online help and support and the online tutorials for the lifetime of the membership." *See* Exhibit 16.

88.     Defendant Molinaro targets unsophisticated Internet users and entices them to download copyrighted works through <TVShows.org> by giving them the false impression that the website is authorized by Plaintiffs to distribute their copyrighted films and television programs, and that the downloading activities facilitated by the site are legitimate and legal. Molinaro creates this false impression and promotes infringing conduct by arranging to have <TVShows.org> appear as a "sponsored link" on search engines such as Google in response to queries for copyrighted television programs. For example, at one point in time, Google users who entered searches for "Download West Wing" and "Download 24," referencing the copyrighted television shows, would see <TVShows.org> as a sponsored search result. For some period of time, Molinaro added to this false impression by displaying titles and promotional images of a number of popular copyrighted television programs, including "Survivor," "Alias," "Friends," and "CSI," on the home page of <TVShows.org>. *See* Exhibit

15. Finally, Defendant Molinaro attempts to confuse and mislead his customers about the legality of downloading copyrighted works by posting the following misleading statement on a page entitled "Stay Legal" inside the "Member's Area" of his site:

> The tools we present to you on this website[] are 100% legal, using them is still 100% legal, and of course, membership to this website is 100% legal. You can be assured that File-Sharing is 100% legal, MP3s are 100% legal, and your membership to mp3university.com [sic] is 100% legal.

*See* Exhibit 16. Through these statements and activities, Defendant Molinaro intends to create, and in fact does create, the false impression that <TVShows.org> and the downloading activities it facilitates are legal. In addition, these statements and activities further evidence that Defendant Molinaro intends to induce infringement of Plaintiffs' copyrights.

89.     Molinaro creates the false impression that <TVShows.org> and the downloading activities it facilitates are legal despite his knowledge that the website and its services are patently illegal. On the home page of <TVShows.org>, Molinaro acknowledges that "[u]ploading or downloading of copyrighted material without the permission or authorization of the copyright holders may be illegal and could be subject to civil and/or criminal liability and penalties." *See* Exhibit 16. Nonetheless, Molinaro assists his customers in evading the legal action that could result from the copyright infringement they undertake through the websites. In particular, the "Stay Legal" page inside the "Member's Area" offers customers advice on how to protect themselves from copyright infringement actions, and provides a link to "MP3Guard.com," a third-party service that "completely hide[s] your activity from the eyes of the RIAA and any government authority." *See id.* Molinaro also provides a link to the Electronic Frontier Foundation's "How to Not Get Sued for File Sharing" page for further advice on how to steal copyrighted works without being caught. Finally, Molinaro reassures his customers that, although they could be sued for copyright infringement as a result of such

downloading, "the odds of being singled out among an estimated 60 million people using peer-to-peer software remain small." *See id.*

<h2 style="text-align:center"><strong>MyKazaa.com</strong></h2>

90.     Defendant Saul Puler previously operated the website <MyKazaa.com>. That site was shut down some time after Plaintiffs filed their original Complaint in this matter.

91.     Defendant Puler enticed Internet users to join <MyKazaa.com> by promising that customers would be able to "[d]ownload anything [they] want, any time [they] want." *See* Exhibit 17. Puler boasted that <MyKazaa.com> had "[o]ver 30,000,000 users online [and] [o]ver 1,000,000,000 files share [sic]!" *See id.* Puler gave his customers "the tools and [sic] access" to "thousands upon thousands of . . . Full-length Movies" from "the largest file-trading networks online." *See id.*

92.     In the "Member's Area" of <MyKazaa.com>, Puler offered his "featured" file-copying program, 360Share, accompanied by a "Step By Step Guide" and a video demonstration to thoroughly instruct customers on how to install the program and use it to download files. *See* Exhibit 17. Links to several other file-copying programs, such as iSwipe and BitTorrent, were also provided, with instructions for installing them and using them to copy files. *See id.* In addition, Puler offered a "CD Burning & Ripping program," a video player, and "Pro-Pack Codecs" to enable his customers to view the films and television programs they downloaded. *See id.* To answer customers' downloading questions not answered in the website's instructional pages or video demonstrations, Puler employed "3 teams offering support around the clock and 7 days a week" who "guarantee[d] to solve [customers'] issues on first contact or [their] money back." *See id.*

93.     In exchange for the assistance he provided to his customers to facilitate their downloading of copyrighted motion pictures, Puler charged $22.46 for "Lifetime Full & Unlimited Access" to <MyKazaa.com>, $0.99 per month for two years of access, or $1.49 per month for one year of access.

94.     Defendant Puler encouraged Internet users to download "thousands upon thousands of . . . Full-length Movies," *see* Exhibit 17, through <MyKazaa.com> despite full knowledge that doing so is illegal.  On a page entitled "Stay Legal" inside the "member's area," Puler acknowledged that "Sharing copyrighted material without permission to do so is Illegal." *See id.*  However, on the same page, he misled his customers about the legality of downloading copyrighted works through the website, stating,

> The tools we present to you on this website[] are 100% legal, using them is still 100% legal, and of course, membership to this website is 100% legal. You can be assured that File-Sharing is 100% legal, MP3s are 100% legal, and your membership to mp3university.com [sic] is 100% legal.

*See id.*  For those customers not misled into believing that downloading copyrighted works through <MyKazaa.com> is "100% legal," Puler went on to reassure them that, although they could be sued for copyright infringement as a result of such downloading, "the odds of being singled out among an estimated 60 million people using peer-to-peer software remain small." *See id.*  Puler also provided a link to the Electronic Frontier Foundation's "How Not to Get Sued" page for further advice on how to download copyrighted works without being caught. *See id.*  In addition, he referred users to "MP3Guard.com," a third-party service that "completely hide[s] your activity from the eyes of the RIAA and any government authority." *See id.*  Through this combination of misleading and cajoling statements, Defendant Puler created a false impression about the legality of file-copying and encouraged his customers to download copyrighted works, despite his full knowledge that such infringing conduct is illegal.

95.     Upon information and belief, <MyKazaa.com> is related to <TVShows.org>. Although the home page of <MyKazaa.com> differed in appearance from <TVShows.org>, at all relevant times, the "members' section" of <MyKazaa.com> was virtually identical to the "Member's Area" of <TVShows.org>.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement Pursuant to 17 U.S.C. § 501 *et seq.*)

96.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 95 as if fully set forth herein.

97.     Motion pictures and television programs owned by Plaintiffs have been illegally downloaded, without authorization, through Defendants' websites, and with their assistance. Plaintiffs own the copyrights, or the exclusive reproduction and distribution rights, in the motion pictures and television programs listed on Exhibit 1, all of which have been infringed through Defendants' websites, as indicated on that exhibit.

98.     Defendants are liable under the Copyright Act for inducing the unauthorized reproduction and distribution of copies of copyrighted motion pictures by Internet consumers in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. Defendants' inducement of copyright infringement is apparent from, among other things, the advertisements for their infringing websites on <Google.com> and <Yahoo.com> promoting the availability of copyrighted films through those sites, as well as similar statements on the websites themselves. Through the creation, maintenance, operation, and promotion of these pirate websites, Defendants knowingly induced the unauthorized reproduction and distribution of copyrighted motion pictures and television programs, including those listed on Exhibit 1, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

99.     Defendants are liable as contributory copyright infringers for the infringing acts of users of their websites. Defendants have actual and constructive knowledge of the infringing activity that occurs through their websites. Through the creation, maintenance, operation, and promotion of their websites, Defendants knowingly caused and/or otherwise materially contributed to the unauthorized reproduction and distribution of motion pictures and television programs, including those listed on Exhibit 1, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

100.     Defendants are vicariously liable for the infringing acts of users of their websites. Defendants have the right and ability to control the infringing activities of those who use them, and, at all relevant times, Defendants have derived direct financial benefit from the infringement of Plaintiffs' copyrights. Defendants are therefore vicariously liable for the unauthorized reproduction and distribution of motion pictures and television programs, including those listed on Exhibit 1, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

101.     The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

102.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyright and exclusive rights under copyright, Plaintiffs are entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

103.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for all individual infringements involved in the action with respect to any one work for which any one infringer is liable

individually, or for which any two or more infringers are liable jointly and severally, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

104.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505, as well as preliminary and permanent injunctive relief against current and future violations.

105.    Defendants' conduct threatens to cause, and is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of their copyrights and exclusive rights under copyright.

## SECOND CLAIM FOR RELIEF

(For Unfair Competition Pursuant to 15 U.S.C. § 1125(a))

106.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 105 as if fully set forth herein.

107.    By, among other things, featuring Plaintiffs' promotional materials (*i.e.*, Plaintiffs' posters or "one-sheets" used to advertise and promote popular films and television programs), by arranging to have their websites appear as "sponsored links" in response to queries for Plaintiffs' motion pictures and television programs on popular Internet search engines, by posting "drop-down" menus, lists of, and other explicit references to Plaintiffs' motion pictures and television programs ostensibly available for downloading through their websites, and by proclaiming or suggesting that their Internet-based services that facilitate the downloading of copyrighted motion pictures and television programs are legal, Defendants have and are engaged

40

in conduct likely to confuse or deceive consumers into incorrectly believing that their websites and services are or were legal, authorized, endorsed, sponsored, approved, and/or licensed by Plaintiffs. This conduct constitutes unfair competition and violates 15 U.S.C. § 1125(a).

108. Defendants' actions are intended to cause, are likely to cause, have caused, and, unless enjoined, will continue to cause consumers to be confused or deceived into incorrectly believing that their websites and services are or were authorized, endorsed, sponsored, approved, and/or licensed by Plaintiffs.

109. Because Defendants are violating Plaintiffs' rights with the purpose and intent of causing confusion and deception, Plaintiffs are entitled to the remedies set forth in 15 U.S.C. § 1117, as well as preliminary and permanent injunctive relief. Defendants' acts involve such circumstances that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

110. For a preliminary and permanent injunction enjoining Defendants and their respective agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with each or any of them, from:

    (a)    inducing, aiding, encouraging, enabling, causing, materially contributing to, or otherwise facilitating the illicit reproduction, downloading, uploading, and/or distribution of copies of Plaintiffs' copyrighted works, whether through the websites named herein, or through any other means;

    (b)    engaging in unfair competition by using Plaintiffs' promotional materials and/or film or television titles in commerce without authorization and/or otherwise operating their websites in a manner that is likely to confuse or

41

deceive consumers into believing, incorrectly, that Defendants' websites and services are authorized, endorsed, sponsored, approved, and/or licensed by Plaintiffs.

111. For Defendants' profits in such amount as may be found.

112. For all statutory and other damages to which Plaintiffs may be entitled.

113. For prejudgment interest according to law.

114. For Plaintiffs' attorneys' fees, full costs, and disbursements in this action.

115. For such other and further relief as the Court may deem proper and just.


WILLIAMS & CONNOLLY LLP


By: _Judith G. Becker_
     Paul B. Gaffney (PG 7800)
     Christopher N. Manning (CM 4231)
     Judith G. Becker (JB 2672)

     725 Twelfth Street, N.W.
     Washington, DC  20005
     (202) 434-5000

     *Attorneys for Plaintiffs*

December 22, 2006

## CERTIFICATE OF SERVICE

I, Judith G. Becker, hereby certify that on this 22nd day of December, 2006, I caused a true and correct copy of the foregoing Second Amended Complaint to be served via overnight delivery upon:

Multimedia Reactor, LLC
19410 SW 30th Street
Miramar, FL  33029
Attn: Sarah Harran

Ishmael Lopez
2244 220th Street
Sauk Village, IL  60411

Ray Beckerman
Vandenberg & Feliu, LLP
110 East 42nd Street
New York, NY  10017
*Counsel for Chris Cope and C&C Networks, Inc.*

Douglas A. Kuber
Kuber Law Group, P.C.
575 Madison Avenue
10th Floor
New York, NY  10022
*Counsel for Marc Molinaro*

Richard Allen Atlman
285 West 4th Street
New York, NY  10014
*Counsel for Matthew Ashworth*

Lauren X. Topelsohn
Law Office of Lauren Topelsohn
575 Madison Avenue, Suite 1006
New York, NY 10022
*Counsel for Adam Barger*

Jonathan D. Greene
Law Offices of Jonathan D. Greene, PA
3175 West Hillsboro Blvd.
Suite 300
Deerfield Beach, FL  33442
*Counsel for Oleg Kolosov*

Adrian Tyndall
Your Law
Virginia House
Kings Meaburn
Penrith
Cumbira CA 10 3U
England
*Counsel for Jonathan Davies*

Judith G. Becker